```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW HAMPSHIRE
```

Barbara B. Desautels

    v.                                   Civil No. 10-cv-464-JL
                                                   Opinion No. 2011 DNH 079

Fidelity Investments Life
Insurance Company


**MEMORANDUM ORDER**

Plaintiff Barbara Desautels, having lost her job at Fidelity Investments Life Insurance Company and received five months of wages as severance pay, brought a breach of contract action against the company in New Hampshire state court, seeking to recover additional severance pay allegedly owed to her under a severance agreement.  Fidelity removed the case to this court, see 28 U.S.C. § 1441, and then moved to dismiss it, see Fed. R. Civ. P. 12(b)(6), arguing that (1) it is pre-empted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a); and (2) even if construed as an ERISA action, it must be dismissed because Desautels failed to exhaust her administrative remedies.  See Medina v. Metro. Life Ins. Co., 588 F.3d 41, 47 (1st Cir. 2009) (discussing ERISA exhaustion requirement).  This court, which has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 29 U.S.C.

§ 1132(e)(1) (ERISA), ordered supplemental briefing on whether, setting aside those two issues, Desautels had even stated a claim for breach of the severance agreement.  See document no. 10.

Following oral argument, Fidelity's motion to dismiss is granted.  This case clearly relates to an employee benefit plan (namely, Fidelity's severance plan) and thus falls within ERISA's express pre-emption provision.  See 29 U.S.C. § 1144(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (construing that provision broadly).  But regardless of whether ERISA or state law applies, the result is the same.  Both ERISA and state law require that unambiguous contractual language be interpreted in accordance with its plain meaning.  See, e.g., Forcier v. Metro. Life Ins. Co., 469 F.3d 178, 185 (1st Cir. 2006) (ERISA); One Beacon Ins., LLC v. M&M Pizza, Inc., 160 N.H. 638, 641 (2010) (state law).  The severance agreement, by its plain meaning, entitles Desautels only to the five months of wages that she has already received from Fidelity, not to the additional severance pay that she is seeking here.  Her case must therefore be dismissed for failure to state a claim.

## I.  Applicable legal standard

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In analyzing whether dismissal is appropriate, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Tasker v. DHL Retirement Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010).  The court is not, however, required to accept the plaintiff's "legal conclusions," Iqbal, 129 S. Ct. at 1949, such as her interpretation of contractual provisions.  See, e.g., CP III Rincon Towers, Inc. v. Cohen, No. 10-cv-4639, 2011 WL 651434, at *2 (S.D.N.Y. Feb. 16, 2011).

## II.  Background

Fidelity notified Desautels in August 2009 that her position at the company, where she had worked for eight years, was being eliminated "due to a reduction in force."  Enclosed with the notification letter were a summary description of Fidelity's severance plan and a proposed severance agreement, drafted by Fidelity.[1]  As explained in that summary description, the

---

[1]Desautels attached the notification letter and severance agreement to her complaint, so they may be treated as "part of

severance plan provided that employees in Desautels's position and pay range ($85,000 to $100,000) whose jobs were eliminated and who satisfied certain other conditions "shall be entitled" to severance pay "equal to the greater" of either "5 months' base pay" or "one-half of one's month's base pay . . . for every year of . . . service with the Company."  Document no. 5-2, at 15; see also document no. 5-3, at 1.  The plan stated that, to receive severance pay, an employee "must agree to and sign a separation letter satisfactory to the Company."  Document no. 5-2, at 8; see also document no. 5-3, at 2.  The plan further stated that the "severance payments provided for in the Plan are the maximum benefits that the Company will pay," barring any other legal requirements.  Document no. 5-2, at 9.

Desautels signed the proposed severance agreement in September 2009, before her last day of work.  The agreement included the following "Severance Pay" provision:

> If you continue working through your Separation Date and if you have not located alternative employment or been offered a comparable position by Fidelity or its

---

the pleading for all purposes."  Fed. R. Civ. P. 10(c); see also Santana-Castro v. Toledo-Davila, 579 F.3d 109, 111-12 (1st Cir. 2009).  Fidelity also submitted the severance plan and summary description with its motion.  Desautels has not challenged the authenticity of those documents or moved to strike them from the record.  This court will therefore consider them, too, in analyzing Fidelity's motion.  See, e.g., Perry v. New Eng. Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (1st Cir. 2003) (deeming it appropriate to consider ERISA plan submitted with motion to dismiss, absent challenge to authenticity).

>  affiliates by your Separation Date, then Fidelity will
>  pay you 5 months of pay, including your wages through
>  your final pay period and ($35,654.94) of severance
>  pay, less income taxes and other appropriate
>  withholdings, consistent with the terms of this letter.
>  Your severance pay will be due and payable in
>  installments on what would have been your regular pay
>  dates if you had remained an active Fidelity employee
>  during the 5 month severance pay period.  Those
>  installments will begin on your next regular pay date
>  following your Separation Date or the date you sign
>  this letter and return it to Fidelity, whichever is
>  later.

Document 1-1, at 5 (parentheses in original).

After Desautels satisfied the conditions set forth in that provision, Fidelity proceeded to pay her five months of wages, consisting of her wages through her final pay period ($4,365.89) plus $35,654.94, for a total of $40,020.83.[2] Believing that the severance agreement entitled her to both five months of wages and $35,654.94 of severance pay, Desautels demanded that Fidelity pay that additional $35,654.94.  Her attorney initially called Fidelity's in-house counsel to discuss the matter in November 2009, and then she and her attorney each sent demand letters to Fidelity in early 2010.  Fidelity, believing that the agreement

---

[2]This court ordered the parties to "set forth [their] respective positions on . . . what payments (if any) the defendant has made . . . and what payments (if any) defendant has failed to make."  Document no. 10, at 1.  Fidelity responded by providing the specific amounts listed above, whereas Desautels only stated that she received five months of wages, and then provided an "approx[imate] net" amount.  At oral argument, Desautels concurred with these gross amounts.

entitles Desautels only to the five months of wages already paid, rejected her demands.

**III.  Analysis**

**A.  *ERISA pre-emption***

ERISA expressly pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The Supreme Court has interpreted the phrase "relate to" according to its "broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan."  Pilot Life, 481 U.S. at 47; see also, e.g., Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) ("While ERISA's pre-emption is not boundless, it is far reaching.").  As a result, ERISA pre-emption "has been applied widely to bar state claims seeking damages for alleged breach of obligations pertaining to an ERISA plan," Hotz v. Blue Cross & Blue Shield of Mass., Inc., 292 F.3d 57, 60 (1st Cir. 2002), including breach of contract claims.  See, e.g., Pilot Life, 481 U.S. at 57; Dudley Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co., 302 F.3d 1, 4 (1st Cir. 2002); James F. Jorden et al., Handbook on ERISA Litigation § 3.06[B], at 3-53 to 3-56 (3d. ed. 2010) (citing many more examples).

6

In this case, Desautels's breach of contract claim has a direct connection to Fidelity's severance plan.  She has not disputed that the plan is an "employee benefit plan" covered by ERISA.  See 29 U.S.C. § 1002(3).  Rather, she argues that her claim hinges solely on the meaning of the severance agreement, not the plan.  But the agreement was executed pursuant to the plan, and it promised benefits to be paid out of the plan.  Moreover, as discussed in Part III.B, infra, the plan provides a framework for calculating the amount of severance pay and thus has some bearing on the agreement's meaning.  This is not a case like Gresham v. Lumbermen's Mutual Casualty Co., 404 F.3d 253 (4th Cir. 2005), or Crews v. General American Life Insurance Co., 274 F.3d 502 (8th Cir. 2001), where "the promised [severance] benefits were free-standing and not premised in any way on the existing plan."  Id. at 505.

This court therefore concludes that Desautels's breach of contract claim "relate[s] to" an ERISA plan with the meaning of 29 U.S.C. § 1144(a) and is pre-empted.  Desautels could, however, bring essentially the same claim for severance benefits under ERISA itself.  See 29 U.S.C. § 1132(a)(1)(B) (authorizing ERISA actions "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan"); Dudley Supermarket, 302 F.3d at 3 (explaining that claims pre-empted by ERISA "thus would have to be asserted, if at all, under ERISA").

Accordingly, this court liberally construes her complaint as stating such a claim.  See, e.g., Geaghan v. Prudential Ins. Co. of Am., 2009 DNH 178, 8 (doing the same thing in a pro se case). Nevertheless, as explained in Part III.B, infra, regardless of whether ERISA or state law applies, the result is the same: Desautels's claim must be dismissed on the merits because it is contrary to the plain meaning of the severance agreement.

**B.   *Severance agreement***

It is well established, under both ERISA and state law, that unambiguous contractual language must be interpreted in accordance with its plain meaning.  See, e.g., Forcier, 469 F.3d at 185 ("federal common law . . . requires that we accord an ERISA plan's unambiguous language its plain and ordinary meaning"); One Beacon, 160 N.H. at 641 ("Absent ambiguity, we determine the parties' intent from the plain meaning of the language used in the contract," and "words and phrases used by the parties will be assigned their common meaning").  Both parties have invoked that principle here:  Fidelity argues that the severance agreement, by its plain meaning, entitles Desautels only to five months of wages as severance pay (which she has already received).  Desautels, in turn, argues that the severance agreement plainly entitles her not only to five months of wages,

but also to $35,654.94 of additional severance pay.  Of course, only one of them can be right.  This court agrees with Fidelity's interpretation and therefore dismisses the case under Rule 12(b)(6) for failure to state a claim.

The severance agreement provides that "Fidelity will pay you 5 months of pay, including your wages through your final pay period and ($35,654.94) of severance pay, less income taxes and other appropriate withholdings."  The plain meaning of that language is that the "5 months of pay" includes both the "wages through your final pay period" and the "($35,654.94) of severance pay," both of which are listed in the "including" clause, which is set off by commas on each end.  There is no comma before the reference to "($35,654.94) of severance pay," as would be expected if the parties intended for the $35,654.94 to be excluded from, rather than "includ[ed]" within, the "5 months of pay.  As our court of appeals has said of statutes, a contract "should be parsed as punctuated unless some good reason exists to read it otherwise."  Lopez-Soto v. Hawayek, 175 F.3d 170, 174 (1st Cir. 1999).  Desautels has not identified any good reason to

disregard the punctuation here,[3] or to infer a comma where one neither exists nor is logically compelled.

A number of contextual cues in the agreement provide further support for that plain-meaning interpretation (if any were needed). For example, the agreement refers to the "5 month severance pay period," which belies Desautels's argument that the "5 months of pay" and the "severance pay" are separate items. So does the provision's title, which is simply "Severance Pay." Moreover, the parentheses around the number $35,654.94 suggest that it is the product of a standard mathematical calculation: "5 months of pay" minus the "wages through your final pay period." That is indeed how the math worked out: Desautels received a total of $40,020.83, representing "5 months of pay," of which $4,365.89 constituted "wages through [her] final pay period," leaving a balance of $35,654.94 in severance pay. That clean calculation cannot reasonably be attributed to mere coincidence. It is confirmation that the agreement means what it plainly says.

Fidelity's severance plan, and the summary description of it that Desautels received along with the severance agreement,

---

[3]At oral argument, Desautel's argued that, because the comma appeared before "and," punctuation rules would have tolerated its omission. See, e.g., William A. Sabin, The Gregg Reference Manual 43 (11th ed. 2008). But punctuation rules always require commas to set off an adjectival phrase like "including your wages through your final pay period." Id. at 16; see also The Chicago Manual of Style, 167-68 (14th ed. 1993).

provide still more support for the plain-meaning interpretation (again, if any were needed).  They provide that the "maximum" severance Fidelity will pay to employees in Desautels's position and pay range, barring any other legal requirements, is the greater of either "5 months' base pay" or "one-half of one's month's base pay . . . for every year of . . . service with the Company."  Document no. 5-2, at 9, 15; see also document no. 5-3, at 1.  Since Desautels had worked for Fidelity for less than 10 years, that meant her maximum severance under the plan would be "5 months' base pay," which is exactly what her severance agreement, by its plain meaning, provided.  So the plan and summary description also confirm that the severance agreement means what it plainly says.

Because Desautels's claim for an additional $35,654.94 of severance pay is contrary to the plain meaning of the severance agreement, it has no merit under either ERISA or state law.[4]  In light of that conclusion, this court need not resolve the issue of whether Desautels failed to exhaust her administrative

---

[4] If anything, ERISA puts Fidelity in an even stronger position.  Under ERISA, courts must defer to the plan administrator where, as here, the plan gives the administrator discretionary authority to construe the terms of the plan, see document no. 5-2, at 11, and the administrator's interpretation is reasonable and not arbitrary or capricious.  See, e.g., Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 93-94 (1st Cir. 2008) (quoting Morton v. Smith, 91 F.3d 867, 871 n.1 (7th Cir. 1996)); Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003).

11

remedies, which is moot. It is worth noting, however, that nothing in Desautels's complaint or motions briefing gives any indication that she ever availed herself of the severance plan's administrative procedures for challenging the denial of benefits. Cf. Medina, 588 F.3d at 47 (concluding, where the plaintiff "never actually submitted a benefits claim [to the defendant] for evaluation and adjudication," that he had failed to exhaust his administrative remedies).

## IV. Conclusion

For the reasons set forth above, Fidelity's motion to dismiss (document no. 5) is GRANTED. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: May 13, 2011

cc: Thomas C. Neal, Esq.
    Debra Weiss Ford, Esq.